**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 18 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**R.C.**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**GARY D. LEBRATO**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF:
R.C.,                                                      )
                                                           )
      Appellant-Respondent,                      )
                                                           )
         vs.                                 )   No.  02A03-1308-PO-375
                                                           )
K.P.,                                                      )
                                                           )
      Appellee-Petitioner.                       )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Jennifer L. DeGroote, Magistrate
Cause No. 02D01-1305-PO-1242

**February 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

K.P. obtained a protective order against R.C. R.C., proceeding pro se, now appeals, raising for our review whether there was sufficient evidence to support the trial court's issuance of the protective order.[1]

We affirm.

## Facts and Procedural History

K.P. and R.C. were married for ten years and in a non-marital relationship for five additional years. They were also involved in a kennel business together.

In 2012, the relationship between K.P. and R.C. ended. On February 14, 2013, R.C. taped onto K.P.'s garage door a black rose with a camouflage-patterned "X" over it. On other occasions R.C. threatened to burn down K.P.'s home and to poison her dogs.

Sometime after February 14, 2013, R.C. filed suit against K.P., claiming that she had stolen money from him. On April 11, 2013, R.C. rejected a settlement offer K.P. made by delivering a letter to K.P.'s home and leaving it there. On May 2, 2013, R.C. twice called K.P. from a pay phone and left voicemail messages for her regarding the pending lawsuit; the second of these ended with "the ball's in your park, c---. Do it." (Ex. 3.)

On May 12, 2013, K.P. went shopping at a Wal-Mart that was near R.C.'s home. When she returned to her vehicle, she found a piece of paper stuck to the driver's side window of her car; K.P. threw the paper on the floor of her car and drove home. When she

---

[1] R.C. variously characterizes his argument as one appealing from a conviction for Stalking, see Ind. Code §§ 35-45-10-1 & 35-45-10-5, or as challenging the sufficiency of the evidence or K.P.'s standing. R.C. does not appeal from a conviction for Stalking, and his argument only advances the substance of a sufficiency claim. We therefore address his appeal on the sufficiency matter alone.

returned home, she received a phone call from R.C., who said to her, "do you know how many times I've been so f---ing close to you. I should've been able to kill you, you c---." (Tr. 32.)

On May 15, 2013, K.P. filed a petition for a protective order; an ex parte protective order was issued that day.

R.C. left a third phone voicemail message on May 20, 2013, which began with "I just wanna say thank you, you got that abortion." (Ex. 3.) Once he received a copy of the ex parte order, R.C. ceased communication with K.P.

On May 23, 2013, R.C. filed a motion for a contested hearing on the protective order. A hearing was conducted on July 25, 2013, at the conclusion of which the trial court issued an Order for Protection, effective through July 25, 2014.

This appeal ensued.

**Discussion and Decision**

R.C. appeals the trial court's issuance of a protective order under the Indiana Civil Protection Order Act ("the Act"). I.C. § 34-26-5-1 et seq. The Act provides, "[a] person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a … (2) person who has committed stalking under IC 35-45-10-5 … against the petitioner." I.C. § 34-26-5-2(a). "Domestic or family violence," as used in the Act, includes "[a]ttempting to cause, threatening to cause, or causing physical harm to another family or household member" or "placing a family or household member in fear of physical harm." I.C. §§ 34-6-2-34.5(1) & (2). Further, "stalking," as used in the Act, is "a

3

knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened," but does not include conduct protected by statute or constitutional provisions. I.C. § 35-45-10-1.

The respondent in such a case may be a person to whom the petitioner had been married, or with whom the petitioner had been in a dating or sexual relationship. See I.C. §§ 34-6-2-44.8(a)(1), (2), (3); A.S. v. T.H., 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). A petitioner seeking a protective order under the Act must establish by the preponderance of the evidence at least one of the allegations in the petition. A.S., 920 N.E.2d at 806. Upon meeting the burden of proof, "the court shall grant relief necessary to bring about a cessation of the violence or threat of violence." I.C. § 34-26-5-9(f).

Upon review of a protective order for sufficiency of the evidence, we do not reweigh evidence or reassess the credibility of witnesses. A.S., 920 N.E.2d at 806. We look only to the evidence of probative value and the reasonable inferences therefrom that support the trial court's judgment. Id.

Here, the evidence that supports the judgment shows that on multiple occasions R.C. threatened K.P.'s safety and that of her property. Among these communications were multiple instances of harassing voicemails, including one indicating that R.C. had multiple opportunities to kill K.P.: "I should've been able to kill you, you c---." (Tr. at 32.) R.C. admitted to taping a black rose to K.P.'s home; K.P. testified that in her mind, this meant

4

death, and R.C. himself admitted that the rose meant that K.P. was "the worst kind of bitch there is." (Tr. at 12.) K.P. testified that these communications had the effect of placing her in fear for herself, her property, and her dogs; that R.C.'s conduct stopped upon issuance of the ex parte order; and that she believed R.C. would restart his harassment if a protective order did not remain in place.

To the extent R.C. contends that K.P. is not credible or that the trial court should have weighed evidence differently, we are precluded from making such assessments under our standard of review. See A.S., 920 N.E.2d at 806. This is particularly so here, where the trial court expressly stated that it found R.C.'s testimony not credible. (Tr. at 46.)

Accordingly, we conclude there was sufficient evidence from which the trial court could reasonably conclude that R.C. had committed stalking against K.P. We therefore affirm the entry of the protective order.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.